**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

RICHARD BOARD,

                                        Petitioner,

              - v -                                                Civ. No. 9:02-CV-1181
                                                                         (LEK/RFT)
FRANK TRACY,

                                        Respondent.


**APPEARANCES:**                                    **OF COUNSEL:**

RICHARD BOARD
Petitioner, *Pro Se*
98-A-5523
Downstate Correctional Facility
Box F
Fishkill, New York 12524-0445

HON. ELIOT SPITZER                          NELSON R. SHEINGOLD, ESQ.
Attorney General of the State of New York   Assistant Attorney General
Attorney for Respondent
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE**
**UNITED STATES MAGISTRATE JUDGE**

**REPORT RECOMMENDATION and ORDER**

        *Pro se* Petitioner Richard Board, an inmate at Downstate Correctional Facility, brings this

federal *habeas corpus* proceeding, pursuant to 28 U.S.C. § 2254, to challenge the lawfulness of his

incarceration.  Dkt. No. 1, Pet.  Petitioner complains of a judgment of the Albany County Court,

rendered on July 1, 1999, after a jury found him guilty of burglary in the second degree and petit

larceny.  *Id*. at ¶¶ 1-6.  Petitioner was sentenced to a determinate term of imprisonment of eleven

years (11) and eight (8) months for felony burglary conviction to run concurrent with a sentence of

one (1) year for the misdemeanor petit larceny conviction.  *Id*. at ¶ 3.  Petitioner raises the following

grounds in support of his Petition:  (1) the trial court erred in permitting testimony regarding an out-

of-court photo array identification of Petitioner; (2) the evidence was insufficient to support his

conviction; and (3) the trial court's *Allen* Charge was improper.[1]  *Id*. at ¶ 12.  For the reasons set

forth below, it is recommended that the Petition be **DENIED**.

## I.  BACKGROUND

The following facts were adduced at trial.  On the evening of July 29, 1997, at approximately

10:15 p.m., Lisa Campione, the resident of a ground level apartment at 39 South Lake Avenue,

Albany, New York, returned to her apartment with her boyfriend, Tim Longo, when she heard some

rustling noises coming from her apartment.  *See* Transcript of Trial of Richard Board (4/27/98)

("Trial Tr.") at pp. 86 & 101-03.  Ms. Campione and her boyfriend waited for a few moments

outside the building when Ms. Campione distinctly heard a door slam and bells ringing.  *Id*. at p.

103.  Ms. Campione indicated that she had bells hanging on her door that rang when the door

opened or closed.  *Id*.  At that point, she and her boyfriend remained at the front of the building to

wait for someone to exit the main doors.  *Id*. at p. 104.  At that point, they heard one of the main

doors creak, and upon further inspection, they noticed a man standing in the top stairwell doorway.

*Id*.  Ms. Campione described the individual as an African American man wearing all black with a

bag over his shoulder, which she noticed contained some electronic equipment.  *Id*. at pp. 105-06.

Mr. Longo confronted and questioned the individual who first claimed to be a tenant in the building;

however, after Ms. Campione stated she had never seen him before, the individual claimed to be a

friend of a tenant.  *Id*.  After further questioning, Mr. Longo and the individual had a physical

---

[1] This matter has been referred to this Court for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).  *See also* FED. R. CIV. P. 72(b).

altercation resulting in the individual punching Mr. Longo in the face and then retreating down the street. *Id*. at pp. 106-07.

Inside the apartment, the couple found that the door to her apartment was broken and several items were missing, including her VCR. *Id*. at p. 114. When the police arrived, Mr. Longo described the individual as a black male of medium build, approximately five feet, seven or eight inches tall, weighing approximately 160 to 175 pounds, and missing a tooth. *Id*. at p. 172. Mr. Long further indicated that the individual was wearing dark jeans with a black shirt and was carrying a gray bag over his shoulder. *Id*. Mr. Longo then accompanied the officers to the police station for further questioning. *Id*. at pp. 172-73. At the police station, Mr. Longo viewed an array of photographs of individuals whom the police felt matched Mr. Longo's description; Mr. Longo identified the assailant from one of the pictures presented to him. *Id*. at p. 173. At trial, Mr. Longo identified the Petitioner as the individual who assailed him on the night in question. *Id*. at p. 186.

On December 2, 1997, Petitioner was indicted by an Albany County Grand Jury of one count of burglary in the first degree, in violation of New York Penal Law § 140.30(2), and one count of petit larceny, in violation of New York Penal Law § 155.25. *See* State Court Record ("State R.") at p. 1, Indictment (12/2/97). Thereafter, pursuant to Petitioner's pre-trial motion, a suppression hearing was held before the Honorable Thomas Breslin, Albany County Court, regarding, *inter alia*, the reliability of the photo array identification and the admissibility of a subsequent in-court identification. State R. at pp. 16 & 65, Suppression Hr'g Tr. Judge Breslin ruled that the photo array was lawful and and denied Petitioner's motion to suppress. *Id*. at pp. 80-85. A jury trial was held on April 27, 1998 through April 30, 1998. At one point during the jury's deliberations, the trial court received a note from the jury indicating they were "unable to come to a unanimous

agreement." Trial Tr. at pp. 488-89.  After hearing brief argument, including defense counsel's objections, the trial court delivered a charge pursuant to *Allen v. United States*, 164 U.S. 492 (1896). *Id*. at pp. 489-500.  After the recitation of the *Allen* Charge, defense counsel objected to the substance of the charge.  *Id*. at pp. 500-01.  Thereafter, on April 30, 1998, the jury convicted Petitioner of the crimes of burglary in the second degree and petit larceny and acquitted Petitioner of the burglary in the first degree charge.  *Id*. at pp. 519-21.

Prior to his sentencing, Petitioner filed a *pro se* motion, later supported and supplemented by his attorney, pursuant to New York Criminal Procedure Law ("CPL") § 330.30, to set aside the jury's verdict on grounds that, *inter alia*, 1) the evidence was not legally sufficient to support a conviction, and 2) prosecution improperly mentioned the pre-trial photographic identification during its case-in-chief.  *See generally* State R. at pp. 87-96.  The motion was denied orally by the trial court on July 1, 1998.  *Id*. at pp. 97-98.  That same date, Petitioner was sentenced to a determinate term of incarceration of eleven (11) years and eight (8) months for the felony charge, one (1) year for the misdemeanor charge to be served concurrently, and Petitioner was ordered to pay restitution. *Id*. at pp. 106-07.

Petitioner pursued a direct appeal[2] of his convictions to the New York State Supreme Court, Appellate Division, Third Department raising four grounds: 1) the trial court improperly permitted testimony regarding an out-of-court photo array identification; 2) the prosecution failed to prove that petitioner had entered a "dwelling"; 3) the trial court improperly delivered an *Allen* charge to the

---

[2] Petitioner also collaterally attacked his judgment of conviction on June 21, 1999, when he filed a motion, pursuant to CPL § 440.10, to vacate his judgment of conviction based upon alleged errors arising from the grand jury presentation in the matter.  State R. at p. 109.  The motion was denied by Decision and Order, dated November 12, 1999.  State R. at p. 130.  Petitioner concedes he never appealed the denial of his CPL § 440.10 motion to the Third Department and has not raised any claims included therein in support of the instant Petition.  *See* Pet. at ¶ 11(c).

jury; and 4) the prosecution had committed several discovery violations.  *See* Appellate Court

Records ("App. R.") at pp. 1-17 (Pet'r Brief).  On January 20, 2000, the Third Department affirmed

Petitioner's convictions.  *People v. Board*, 702 N.Y.S.2d 201 (N.Y. App. Div., 3d Dep't 2000).

Leave to appeal to the New York State Court of Appeals was denied on June 18, 2001.  *People v.*

*Board*, 754 N.E.2d 1116 (N.Y. 2001).  This Petition followed.

## II. DISCUSSION

### A.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-

132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court may not grant *habeas* relief to a state

prisoner on a claim:

> that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim –
>> 1) resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law, as
>> determined by the Supreme Court of the United States; or
>> 2) resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented in the State
>> court proceeding.

28 U.S.C. § 2254(d); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005);
*Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. LeFevre*, 246 F.3d 76,
88 (2d Cir. 2001).

The AEDPA also requires that in any such proceeding "a determination of a factual

issue made by a State court shall be presumed to be correct [and t]he applicant shall have the

burden of rebutting the presumption of correctness by clear and convincing evidence."  28

U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d at 66; *Boyette v. LeFevre*, 246

F.3d at 88 (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this

test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court
> may grant habeas relief:  1) Was the principle of Supreme Court case law relied
> upon in the habeas petition "clearly established" when the state court ruled?  2)
> If so, was the state court's decision "contrary to" that established Supreme Court
> precedent?  3) If not, did the state court's decision constitute an "unreasonable
> application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams and Francis S. v. Stone*,
221 F.3d 100, 108-09 (2d Cir. 2000)).

## B.  Petitioner's Claims

### 1.  Pre-Trial Identification Testimony

In his first ground in support of relief sought, Petitioner claims he was deprived of a

fair trial when the prosecutor was permitted use of a prior out-of-court photo identification,

which Petitioner contends was unreliable, to bolster its witness's in-court identification of

Board.  Pet. at ¶ 12(A).  Board further expounds that the mentioning at trial of this prior

identification was unduly suggestive in that the testimonial reference allowed the jury to

surmise that Petitioner had in the past been in trouble with the law.  *See* Dkt. No. 2, Pet'r

Mem. of Law at pp. 4-8.  Respondent contends that Petitioner has failed to exhaust this

claim and, regardless, has failed to state a claim implicating a federal right.  Dkt. No. 13,

Resp't Mem. of Law at pp. 5-7.

The exhaustion requirement, codified at 28 U.S.C. § 2254 (b) and (c), evinces the

long-standing principle that a state prisoner seeking federal *habeas* review of his state

conviction must first exhaust all state remedies thereby ensuring that the state courts are

afforded a fair opportunity to pass upon the federal claims.  *Daye v. Attorney Gen. of the*

*State of New York*, 696 F.2d 186, 191 (2d Cir. 1982) (citing, *inter alia*, *Picard v. Connor*,

404 U.S. 270, 275 (1971)).[3]   To satisfy the exhaustion requirement, a petitioner must do

more than merely pass through the state courts.  *See Picard v. Connor*, 404 U.S. at 275-76

("[I]t is not sufficient merely that the federal habeas applicant has been through the state

courts.").  In this regard, courts require a petitioner to "fairly present" his federal

constitutional claims in state court.  *Id*.  "Although the petitioner need not have cited 'book

and verse on the federal constitution,' he must have articulated 'the substantial equivalent'

of the federal habeas claim."  *Colon v. Artuz*, 174 F. Supp. 2d 108, 114-15 (S.D.N.Y. 2001)

(quoting *Picard v. Connor*, 404 U.S. at 278); *see also Daye v. Attorney Gen. of the State of*

*New York*, 696 F.2d at 194.  A petitioner may fairly present the constitutional nature of his

claim by

> (a) reliance on pertinent federal cases employing constitutional analysis, (b)
> reliance on state cases employing constitutional analysis in like fact situations,
> (c) assertion of the claim in terms so particular as to call to mind a specific right
> protected by the Constitution, and (d) allegation of a pattern of facts that is well
> within the mainstream of constitutional litigation.

*Daye v. Attorney Gen.*, 696 F.2d at 194.

In reviewing Petitioner's Brief to the Appellate Division in support of his direct

appeal, we find that Respondent correctly asserts that Board relied primarily on the New

York State rules regarding a prosecutor's use of prior out-of-court photo identifications.  The

---

[3] 28 U.S.C. § 2254 (b) and (c) provide, in part, as follows:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to
> the judgment of a State court shall not be granted unless it appears that: (A) the applicant has
> exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available
> State corrective process; or (ii) circumstances exist that render such process ineffective to protect the
> rights of the applicant. . . .
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts
> of the State, within the meaning of this section, if he has the right under the law of the State to raise, by
> any available procedure, the question presented.

rule in New York generally forbids the use of evidence regarding out-of-court

identifications and any reference therewith is deemed an improper bolstering of a subsequent

in-court identification.  *See, e.g.*, *People v. Lindsay*, 364 N.E.2d 1302 (N.Y. 1977) (cited in

*People v. Board*, 702 N.Y.S.2d at 203).  No where in his Appellate Brief does Board

mention any federal right, either constitutional or statutory, nor does he rely on cases which

employed constitutional analysis.  Respondent further points out that Board never appealed

Judge Breslin's ruling at his *Wade* Suppression Hearing as to the reliability of the out-of-

court identification procedure.  Thus, any challenge as to the reliability of the out-of-court

identification is clearly unexhausted and cannot be reviewed by this Court without a further

showing by Petitioner as to cause for his failure to raise such claim in the state court as well

as any resulting prejudice.  *See, e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 750 (1991);

*Ramirez v. Attorney Gen. of State of New York*, 280 F.3d 87, 94  (2d Cir. 2001).  Petitioner

counters that he is not challenging the <u>reliability</u> of the identification procedure *per se*, but

rather, challenges the prosecutor's <u>reference</u> to the identification as an attempt to bolster the

in-court identification, which resulted in a denial of his right to a fair trial.  In this regard, we

note that the testimonial reference to the out-of-court identification is purely a matter of state

law and does not implicate any right guaranteed by the federal constitution.  *See Smith v.*

*Johnson*, 1999 WL 1007348, at *3 (E.D.N.Y. Sept. 30, 1999) ("Generally, erroneous

evidentiary rulings by a state trial court do not constitute a basis upon which a writ of *habeas*

*corpus* can be issued.") (quoting *Underwood v. Kelly*, 692 F. Supp. 146, 150 (E.D.N.Y.),

*aff'd*, 875 F.2d 857 (2d Cir. 1988)).  As such, this Court must assess whether the admission

of the challenged evidence was an "error of constitutional dimension and whether that

constitutional error was harmless beyond a reasonable doubt." *Rosario v. Kuhlman*, 839

F.2d 918, 924 (2d Cir. 1988) (citing, *inter alia*, *Chapman v. California*, 386 U.S. 18, 22-24

(1967)). Indeed, as highlighted by Respondent, testimony regarding an out-of-court

identification, such as a photo array, is specifically permitted under the Federal Rules of

Evidence and, in fact, deemed non-hearsay. FED. R. EVID. 801(d)(1)(c). Thus, in reference

to the *Daye* factors of exhaustion, this Court finds that Petitioners first ground for relief fails

to assert any claim in the state courts that would "call to mind a specific right protected by

the Constitution[.]" Accordingly, we find that Petitioner has failed to exhaust his

administrative remedies with regard to his claim, if any, of reliability of out-of-court

identification, and as to his claim of improper testimonial reference, we find that no federal

claim is implicated. We therefore recommend **denial** of Board's first ground for *habeas*

relief.

### 2. Sufficiency of the Evidence

In his second ground for relief, Board argues that the evidence introduced at trial was

insufficient to sustain his conviction. Pet. at ¶ 12(B). In support of this ground, Petitioner

asserts that his conviction rested solely on the improperly solicited testimony regarding the

out-of-court identification and that no physical evidence links him to the crime. *Id.*; *see also*

Pet'r Mem. of Law at pp. 9-12. Respondent maintains that this claim has not been

exhausted. Resp't Mem. of Law at pp. 7-8. Indeed, it appears to this Court that ground two

in support of the relief sought is contingent on, or rather a contiguous theory of, ground one,

which, as explained above, this Court has already deemed unexhausted. Upon further

inspection of Petitioner's Appellate Brief, this Court notes that the issue raised to the

Appellate Division regarding the sufficiency of the evidence revolved around the prosecutor's alleged failure to prove each element of the crime of burglary in the second degree with specific emphasis on the element of whether the part of the building Board was discovered in, the vestibule, was actually a "dwelling."  App. R. at p. 15.  Since Petitioner never presented the issue of identification or reliability as part of his sufficiency of the evidence argument in the state court, this Court finds that such claim is unexhausted.

When a petitioner presents an unexhausted claim in a federal *habeas corpus* petition, he typically must return to state court to seek any adequate state remedies that may exist as to such claim.  *See Engle v. Isaac*, 456 U.S. 107, 125-26 n.28 (1982).  However, a federal *habeas* court need not require a petitioner to return to state court  if it is clear that state law procedurally bars those claims.  *See Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991).  It is clear in this case that this claim could have been presented to the Third Department as it is a matter on the record, yet, Board can no longer seek any state remedies regarding his sufficiency of the evidence claim since the time to do so has clearly expired.  *See* N.Y. CRIM. PROC. LAW §§ 460.10(1)(a) (noting that a defendant has thirty (30) days from the imposition of sentence to file a notice of appeal) & 460.30(1) (imposing a one-year cap after the expiration of the appeal time for a party to seek permission to appeal).  Therefore, this Court may properly deem Board's claim exhausted but procedurally defaulted.  *Spence v. Superintendent Great Meadow Corr. Facility*, 219 F.3d 162, 170 (2d Cir. 2000); *Strogov v. Attorney Gen. of State of New York*, 191 F.3d 188, 193 (2d Cir. 1999) (failure to raise claim based upon matters contained within the record on direct review to Appellate Division constitutes procedural default of such claim); *Senor v. Greiner,* 2002 WL 31102612, at *10

(E.D.N.Y. Sept. 18, 2002).

Therefore, this Court's review of the substance of this procedurally defaulted claim is conditioned upon Board demonstrating cause for his default and resulting prejudice, or presenting evidence to show that he is "actually innocent" of the crime of which he was found guilty.[4]  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Ramirez v. Attorney Gen. of State of New York*, 280 F.3d 87, 94  (2d Cir. 2001); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000) (citing *Coleman*).

To establish legal cause for his procedural default, Board must show that some objective external factor impeded his or her ability to comply with New York's procedural rules.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999).  Examples of external factors include interference by officials, ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial nor on direct appeal.[5]  *Murray v. Carrier*, 477 U.S. at 488.

Petitioner has not demonstrated legal cause for his procedural defaults regarding any of the above claims.  Since he cannot establish such cause, this Court need not decide whether he also suffered actual prejudice as to this claim because federal habeas relief on the basis of a procedurally defaulted claim is unavailable unless **both** cause and prejudice are demonstrated.  *See, e.g.*, *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Pou v. Keane*,

---

[4] This final exception, however, is intended for the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *see also Lebron v. Mann*, 40 F.3d 561, 564 (2d Cir. 1994).

[5] Attorney ignorance or inadvertence is not cause, however, since the attorney is considered the petitioner's agent when acting, or failing to act, in furtherance of the litigation, the petitioner must "'bear the risk of attorney error.'" *Coleman v. Thompson*, 501 U.S. at 753 (quoting *Murray v. Carrier*, 477 U.S. at 488)

977 F. Supp. 577, 581 (N.D.N.Y. 1997) (Kahn, J.) (citing *Stepney*).  Moreover, since Board

has not established that he is actually innocent of any of the crimes of which he was

convicted, the Court recommends that Board's Petition be **denied** as to this ground for this

procedural reason.

### 3.  Improper Allen Charge

In his third and final ground in support of the relief sought, Board contends that the

trial court's *Allen* Charge was improper because it failed to apply the requisite level of

reasonable guidance.  Pet. at ¶ 12(C).  Specifically, Petitioner asserts that the *Allen* Charge

was unconstitutionally coercive to the extent it 1) obligated the jurors to convince one

another; 2) failed to remind the jurors not to relinquish their conscientiously held beliefs;

and 3) impermissibly threatened further sequestration in the event the jurors could not reach

a verdict.  Pet'r Mem. of Law at pp. 13-15.  On appeal, the Appellate Division determined

that the trial court's *Allen* Charge was no coercive nor unbalanced.  *People v. Board*, 702

N.Y.S.2d 201, 203-04 (N.Y. App. Div., 3d Dep't 2000).  Respondent urges dismissal of this

claim based upon the Supreme Court's decision in *Early v. Packer*, 537 U.S. 3 (2002),

wherein they held that there was no clearly established Supreme Court precedent forbidding

such a charge and therefore, the claim was barred from review under 28 U.S.C. § 2254(d)(1).

*Early v. Packer*, 537 U.S. at 10 (citing *Jenkins v. United States*, 380 U.S. 445 (1965) &

*United States v. United States Gypsum Co.*, 438 U.S. 422 (1978)).

Before assessing the merits of Petitioner's claim, we first note that some of his

contentions are factually inaccurate.  After approximately eleven hours of deliberation, the

jury sent a note to the court stating: "We are unable to come to a unanimous agreement.

What direction should we take?  There has been no movement since last night."[6]  Trial Tr. at

p. 492.  After a discussion on the record with the attorneys and outside the presence of the

jury, the trial judge delivered the following charge to the jury:

> Ladies and gentlemen, of course as you know in order to return a verdict each juror must agree upon that verdict.  That is your verdict must be unanimous, and the verdict must represent the considered judgment of each juror in that your verdict must be unanimous.  I do repeat that it is your duty to consult with one another and to deliberate together with a view to reaching an agreement, **if you can do so without violence to individual judgment**.  Each of you must decide this case for yourself, but do so only after an impartial consideration of all of the evidence with your fellow jurors.  During the course of your deliberations do not hesitate to reexamine your own views and do not hesitate to change your opinion if otherwise convinced by the evidence and/or the arguments or reasons advanced by others, **but do not surrender your honest conviction as to the weight or the effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of reaching a verdict.**
>
> * * * *
>
> Ladies and gentlemen, for your information I will tell you that I am bound to hold the jury for a reasonable time in order to give it an opportunity to deliberate and to arrive at its verdict or verdicts.  I suppose that reasonable minds could differ as to what is a reasonable amount of time.
>
> * * * *
>
> [Whereupon the trial judge iterated the time the jury had spent actually deliberating based upon the time the jury received the matter for deliberation minus the time spent either listening to readbacks, ordering food, and taking short breaks.  The court concluded that even though eleven hours have passed, in his estimation, the amount of time "devoted to deliberations and discussions relative to the case" amounted to approximately seven hours.]
>
> * * * *
>
> Because I am required to at least have the jury deliberate for an extensive period of time and become completely satisfied that a unanimous agreement is unlikely within any further reasonable time.  I do feel that the correct course of action is to give you this type of supplementary charge, which even though it is fairly calm and matter of fact is sort of a pep talk to ask you to rededicate yourselves to the task at hand . . . . **I am not going to sit here and misled you and tell you**

---

[6] The jury commenced deliberations the previous day from 5:00 p.m. till 10:30 p.m., at which point the trial judge dismissed and sequestered them.  Trial Tr. at pp. 475-79.  The jurors re-commenced deliberations at approximately 8:30 a.m. the following morning and sent the above referenced note to the court at approximately 2:45 p.m.  *Id*. at p. 492.  Throughout the morning deliberations, the jury sought several readbacks of various testimony.  *Id*. at pp. 480-88.

**that you will be sequestered until you reach a verdict because you will not.
This being a relatively short trial I am certainly not going to sit here and tell
you that you are going to be sequestered for another night if you don't
reach a verdict in this case, because while that's a possibility after a
reasonably short trial that is probably not a reasonable possibility to say
that we are going to have a jury deliberate two and a half days following a
one and a half day trial.  But I do think that it is reasonable to ask you to
deliberate further today for the reasons I said.**

Trial Tr. at pp. 492-500.

In light of the above recitation, this Court finds that Petitioner's characterization of

the charge as "fail[ing] to remind those jurors not to relinquish their conscientiously held

beliefs [and] threatening further sequestration in the event no verdict was reached" is

factually erroneous.  Pet'r Mem. of Law at p. 13.  It is clear from the record that the trial

judge did remind the jurors not to compromise or surrender their honest convictions.  It is

equally clear that the trial judge did not threaten further sequestration and in fact assured the

jurors that such was unlikely to occur.  Accordingly, the only claim this Court will address is

Board's assertion that the charge was unconstitutionally coercive in that it impermissibly

obligated the jurors to "convince one another."  *Id.*

The Second Circuit has "consistently reaffirmed its approval of the supplementary

charge to encourage a verdict in the face of an apparent deadlock."  *United States v.

Ruggiero*, 928 F. 2d 1289, 1299 (2d Cir. 1991) (collecting cases).  In determining whether a

trial court's actions have improperly coerced a jury, the Supreme Court has held that a

reviewing court must look at the supplemental charge given by the judge "in its context and

under all the circumstances."  *Lowenfield v. Phelps*, 484 U.S. 231, 237 (1988) (quoting

*Jenkins v. United States*, 380 U.S. 445, 446 (1968) (*per curiam*)).  "The propriety of an

*Allen*-type charge depends on whether it tends to coerce undecided jurors into reaching a

verdict by abandoning without reason conscientiously held doubts." *United States v. Ruggiero*, 928 F.2d at 1299 (quoting *United States v. Robinson*, 560 F.2d 507, 517 (2d Cir. 1977) (*en banc*)).

After reviewing the trial court's charge, we conclude that the Third Department's assessment that there "is no basis to support the contention that the court's statement was coercive or prejudicial to the defendant," is neither contrary to nor an unreasonable application of established law. We therefore recommend **denying** this ground of the Petition.

### III.  CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that the Petition for a Writ of *Habeas Corpus* (Dkt. No. 1) be **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   September 6, 2005
        Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge